IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BANK OF COMMERCE & TRUST COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 24-1201-KHV |
| BANCCENTRAL, N.A., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

On September 26, 2024, in the District Court of Harper County, Kansas, plaintiff filed suit against defendant, asserting claims under Kansas law for breach of contract, detrimental reliance and negligent misrepresentation. On November 6, 2024, defendant removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). This matter is before the Court on Defendant BancCentral N.A.'s Motion To Dismiss Case For Lack Of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2), For Improper Venue Under Fed. R. Civ. P. 12(b)(3), Or In The Alternative To Transfer Venue To The United States District Court For The Northern District Of Oklahoma (Doc. #6) filed November 27, 2024. For reasons stated below, the Court sustains defendant's motion to dismiss and overrules defendant's request to transfer venue under 28 U.S.C. § 1404.

## Legal Standard

When defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., plaintiff bears the burden to establish personal jurisdiction over defendant. Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch, 750 F.3d 1178, 1179–80 (10th Cir. 2014). At these preliminary stages of litigation, plaintiff's burden to

prove personal jurisdiction is light. AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056 (10th Cir. 2008). To defeat the motion, plaintiff need only make a prima facie showing of personal jurisdiction. Id. Plaintiff can do so by showing facts, through affidavit or other written materials, that if true would support jurisdiction over defendant. Id.; see also Wenz v. Memery Crystal, 55 F.3d 1503, 1508 (10th Cir. 1995) (plaintiff can support jurisdictional allegations "by competent proof"). When evaluating the prima facie case, the Court must resolve all factual disputes in favor of plaintiff. AST Sports, 514 F.3d at 1056.

## Factual And Procedural Background

### I. Plaintiff's Petition

Plaintiff's petition alleges as follows:

Plaintiff is a Kansas corporation with its principal place of business in Harper, Kansas. Defendant is an Oklahoma corporation with its principal place of business in Alva, Oklahoma. Plaintiff and defendant are both financial institutions. 1776 Transportation, LLC—which is no longer in business—was an Oklahoma limited liability company that provided transportation and carrier services.

On some unspecified date before September 30, 2022, 1776 Transportation obtained two loans through defendant and granted it a security interest in two semi-trucks and a Dodge pickup truck. On September 30, 2022, Caleb Pence, owner of 1776 Transportation, contacted plaintiff about refinancing the three trucks. Pence told plaintiff to contact defendant for information concerning the vehicle loans and payoff amounts.

On October 17, 2022, by email, defendant contacted plaintiff about the loans. Plaintiff responded that it would be interested in receiving the payoff amount, as well as verification that after paying off the loan amounts, defendant would release its liens on the two semi-trucks and

pickup truck. Defendant provided plaintiff the payoff amounts and represented that it would provide plaintiff the lien releases once it received payment of the balance owed.

On October 19, 2022, plaintiff and 1776 Transportation entered into a promissory note and security agreement. Plaintiff listed the two semi-trucks and pickup truck as collateral. The next day, plaintiff sent defendant a cover letter and two cashier's checks to pay off the vehicle loans. In the cover letter, plaintiff directed defendant to send it the lien releases. On October 26, 2022, defendant deposited the cashier's checks.

On November 7, 2022, defendant filed the lien releases with the Oklahoma Tax Commission and mailed copies of the releases to 1776 Transportation. Defendant did this unbeknownst to plaintiff, so plaintiff did not have the opportunity to perfect its security interest in the vehicles at the time defendant filed its releases.

On numerous occasions, plaintiff asked Pence to provide it the titles to the collateral. In September of 2023, Pence informed plaintiff that 1776 Transportation was no longer in business and that in December of 2022, he had sold the vehicles after receiving clear title from defendant. Defendant never provided the lien releases to plaintiff.

## II.     Plaintiff's Affidavit

In response to defendant's motion to dismiss, plaintiff submits an affidavit from Curt Clark, plaintiff's Senior Vice President. Affidavit Of Curt Clark (Doc. #7-1) filed December 9, 2024. Clark states that (1) between 2014 and September 23, 2022, defendant operated two branch locations in Kansas, located in Anthony and Harper, Kansas; (2) on September 23, 2022, defendant sold the branch locations; and (3) while defendant owned and operated the two Kansas branches, it advertised locally, solicited business locally, collected and maintained deposits locally, operated a safety deposit box locally, leased and acquired real property in Anthony and

Harper, employed individuals from Anthony and Harper and held and serviced over $20 million in loans in Kansas. Id., ¶¶ 9–11.

### III.     Procedural Background

On September 26, 2024, plaintiff filed suit against defendant, asserting claims under Kansas law for breach of contract, detrimental reliance and negligent misrepresentation. See Verified Petition (Doc. #1-1). Specifically, plaintiff alleges that (1) throughout the course of their communications, defendant agreed to provide plaintiff the lien releases in exchange for paying off the loan balances; (2) defendant breached that agreement by failing to provide the lien releases; and (3) plaintiff relied to its detriment on defendant's false or misleading representation that it would provide the lien releases.

On November 6, 2024, defendant removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). On November 27, 2024, defendant filed its motion to dismiss, asking that the Court (1) dismiss plaintiff's complaint under Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue or (2) in the alternative, transfer the case to the United States District Court for the Northern District of Oklahoma under 28 U.S.C. § 1404. See Motion To Dismiss (Doc. #6).

## Analysis

### I.     Personal Jurisdiction

Defendant argues that the Court should dismiss plaintiff's complaint for lack of personal jurisdiction.

For the Court to exercise personal jurisdiction in a diversity action, plaintiff must show that personal jurisdiction is proper under the laws of the forum state and that doing so comports with the due process requirements of the United States Constitution. See Newsome v. Gallacher,

722 F.3d 1257, 1264 (10th Cir. 2013). The Kansas long-arm statute permits the exercise of any jurisdiction that is consistent with the due process requirements of the United States Constitution. See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304–05 (10th Cir. 1994); see also K.S.A. § 60-308(b)(1)(L). Accordingly, the Court need not conduct a separate personal jurisdiction analysis under Kansas law, and instead may proceed directly to the due process inquiry under federal law. See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (where long-arm statute confers maximum jurisdiction consistent with Due Process Clause, statutory inquiry effectively collapses into constitutional analysis).

The due process analysis requires the Court to determine (1) whether defendant has minimum contacts with the forum state such that it should "reasonably anticipate being haled into court there" and (2) if defendant's actions establish minimum contacts, whether the exercise of personal jurisdiction over it offends "traditional notions of fair play and substantial justice." AST Sports, 514 F.3d at 1057 (quotation marks and citations omitted). To satisfy the "minimum contacts" standard, plaintiff can establish that the Court has either (1) general jurisdiction or (2) specific jurisdiction. Rockwood Select, 750 F.3d at 1179.

Plaintiff alleges jurisdiction under K.S.A. § 60-308, the Kansas long-arm statute which confers both general and specific personal jurisdiction. The Court therefore interprets plaintiff's petition as alleging both general and specific personal jurisdiction.

### A.     General Personal Jurisdiction

The Court may exercise general personal jurisdiction over a nonresident defendant "if its contacts with the State are so continuous and systematic that the person is essentially at home in the State." XMission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020) (quotation marks and citation omitted). When defendant is subject to general personal jurisdiction, the Court may

hear any claim against defendant, even if all the incidents underlying the claim occurred in a different state. Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F.W Cnty., 582 U.S. 255, 262 (2017). General personal jurisdiction in a forum other than defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State." Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014).

To evaluate whether defendant's contacts with Kansas are so systematic and continuous that the Court may exercise general personal jurisdiction, the Court considers (1) whether defendant solicits business in Kansas through a local office or agents; (2) whether defendant sends agents into Kansas on a regular basis to solicit business; (3) the extent to which defendant holds itself out as doing business in Kansas through advertisements or bank accounts; and (4) the volume of business that defendant conducts in Kansas. Trierweiler v. Croxton Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996).

The Supreme Court has never articulated the exact timeline for considering defendant's continuous and systematic contacts with the forum state. Generally, courts consider whether contacts sufficient for personal jurisdiction exist at the time the claim accrues or at the time plaintiff files suit. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) ("Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."); see also Capitol Fed. Sav. Bank v. E. Bank Corp., 493 F. Supp. 2d 1150, 1159 (D. Kan. 2007) ("[T]he court must examine the circumstances as they existed at the time this lawsuit was filed, not later.") (citing Eighth Circuit and Second Circuit case law); Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44, 52 (2d Cir. 1991) ("[P]ersonal jurisdiction depends on the defendant's

contacts with the forum state at the time the lawsuit was filed.").

Here, plaintiff argues that the Court has general personal jurisdiction over defendant because immediately before the events underlying this dispute, defendant owned and operated two branch locations in Kansas and at least some of its business activities continued after the sale of the two branches. Defendant does not dispute that after the sale, it serviced a few loans with Kansas residents and maintained one employee in Kansas. While plaintiff has submitted an affidavit outlining defendant's business contacts with Kansas before the sale of the two branches on September 23, 2022, such facts are immaterial to the Court's analysis whether defendant had systematic and continuous contacts with Kansas at the time the claim accrued (presumably late October and November of 2022) or at the time plaintiff filed suit (September of 2024). Plaintiff's burden at this state of litigation is light and it need only make a prima facie showing of personal jurisdiction through affidavit or other written materials. AST Sports, 514 F.3d at 1056. Even so, plaintiff has presented no competent proof which, if true, would demonstrate continuous and systematic contacts between defendant and Kansas at either relevant period.

As noted, the Court considers the following factors in reviewing defendant's contacts with Kansas: (1) whether defendant solicits business in Kansas through a local office or agents; (2) whether defendant sends agents into Kansas on a regular basis to solicit business; (3) the extent to which defendant holds itself out as doing business in Kansas through advertisements or bank accounts; and (4) the volume of business that defendant conducts in Kansas.

In support of its motion to dismiss, defendant submits the affidavit of Taylor Horst, defendant's Chief Executive Officer and President. See Declaration Of Taylor Horst In Support Of Defendant BancCentral N.A.'s Motion To Dismiss (Doc. #6-1). Horst asserts that after the

sale of defendant's branch locations on September 23, 2022,[1] (1) defendant no longer maintained a physical banking location in Kansas or solicited business from Kansas residents; (2) the one employee who remained in Kansas worked remotely and directed all activity to defendant's Oklahoma office; (3) defendant did not advertise in Kansas or send its employees to Kansas to originate loans; and (4) the remaining loans constituted only a small portion of defendant's overall portfolio.  See id.  Even giving all favorable inferences to plaintiff, each factor weighs against the Court exercising general personal jurisdiction over defendant.  Since September 23, 2022, defendant did not (and does not) maintain a local office, advertise or solicit business within the state or hold itself out as conducting business in the state.  While defendant has serviced a few loans and maintained one employee in the state who works remotely, the volume of that business compared with defendant's overall operations cannot plausibly support continuous and systematic contacts.

Defendant's contacts with Kansas are not so systematic and continuous that the Court may exercise general personal jurisdiction over it.  The Court therefore sustains defendant's motion to dismiss for lack of general personal jurisdiction.

    B.    Specific Personal Jurisdiction

Unlike general personal jurisdiction, specific personal jurisdiction is grounded in the relationship between the defendant, the forum and the litigation.  Walden v. Fiore, 571 U.S. 277, 283–84 (2014).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  Id. at 284.  The minimum contacts analysis therefore must focus on "the defendant's contacts with the forum

---

[1] Horst's affidavit only states that the sale occurred "[i]n 2022."  Declaration Of Taylor Horst (Doc. #6-1), ¶ 14.  Plaintiff is the party who asserts that the sale specifically occurred on September 23, 2022.  Affidavit Of Curt Clark (Doc. #7-1), ¶ 10.  Because defendant does not dispute this date in its reply, the Court uses the date of September 23, 2022.

State itself, not the defendant's contacts with persons who reside there." Id. at 285.

The minimum contacts test for specific jurisdiction includes two distinct requirements: (1) that defendant "purposefully directed" its activities at residents of the forum state and (2) that plaintiff's alleged injuries "arise out of" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); see Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008). For the Court to find specific jurisdiction, plaintiff must allege "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 472. The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." Id. at 475.

Plaintiff argues that the Court may exercise specific personal jurisdiction over defendant because it purposefully directed its business activities at plaintiff, a Kansas resident, and plaintiff suffered harm in Kansas when it lost its ability to perfect its security interest in the vehicles. Defendant argues that the Court should dismiss plaintiff's complaint because plaintiff has not alleged the purposeful direction element.

The Tenth Circuit has identified several frameworks for determining whether an out-of-state defendant's contacts satisfy the purposeful direction requirement. Because plaintiff asserts tort and contract claims under Kansas law, the Court applies the "effects test" to determine whether defendant purposefully directed its activities to the forum state. Cortishae-Etier v. Ford Glob. Techs., LLC, No. 23-3081-EFM, 2024 WL 663395, at *4 (D. Kan. Feb. 16, 2024) (applying effects test to mixed torts and contract cases).

Under this test, plaintiff can establish purposeful direction by showing that defendant

took (1) an intentional action, that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. Eighteen Seventy, LP v. Jayson, 32 F.4th 956, 970, 966–67 (10th Cir. 2022). On a motion to dismiss, plaintiff meets its prima facie burden by alleging that "an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." XMission, L.C. v. PureHealth Rsch., 105 F.4th 1300, 1309 (10th Cir. 2024).

### 1. Intentional Conduct

To satisfy the first requirement of the "effects test," because the Court must consider plaintiff's allegations as true, plaintiff must merely allege intentional action by defendant. Plaintiff alleges that defendant acted intentionally when it (1) contacted plaintiff regarding 1776 Transportation's loans; (2) provided plaintiff with the payoff amounts; (3) represented that it would provide plaintiff with the lien releases once plaintiff paid the loan amounts; (4) deposited plaintiff's cashier check; (5) filed its lien releases with the Oklahoma Tax Commission; and (6) mailed copies of the releases to 1776 Transportation. Plaintiff has alleged intentional action on the part of defendant.

### 2. Expressly Aimed

Under the second element, mere injury to a forum resident or knowledge of plaintiff's residence in the forum state, without more, cannot establish defendant's express aim towards the forum state. Walden, 571 at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); see also Rockwood Select, 750 F.3d at 1180 ("Walden teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."). To satisfy this requirement, the forum state itself must be the

focal point of the tort. Shrader v. Biddinger, 633 F.3d 1235, 1244 (10th Cir. 2011). In other words, the Tenth Circuit centers the express aiming analysis on whether defendant's allegedly unlawful conduct was focused on or directed at the forum state—not on whether defendant's wrongful conduct was focused on or directed at the interests of plaintiffs who reside in or otherwise have significant connections to the forum state. Eighteen Seventy, 32 F.4th at 972.

Here, defendant argues that it did not direct any conduct toward Kansas or Kansas residents.  Specifically, defendant asserts that (1) the loans at issue involved an Oklahoma company owned by an Oklahoma resident; (2) the collateral was titled in Oklahoma, which required the lien releases and relevant documents to be submitted in Oklahoma; (3) 1776 Transportation, not defendant, solicited plaintiff's participation in the payoff; and (4) it sent the lien releases to 1776 Transportation in Oklahoma.  Defendant argues that its email exchange with plaintiff and acceptance of payment does not demonstrate that it expressly aimed unlawful conduct focused on or directed at Kansas.

Besides a handful of email communications, plaintiff does not allege any acts that defendant expressly aimed at Kansas. Standing alone, the Court cannot find that the communications constitute conduct which would create a substantial and meaningful connection with the state. Moreover, plaintiff has not plausibly alleged that Kansas—not Oklahoma—was the focal point of defendant's alleged breach or tortious conduct.  To meet the "express aiming" element, plaintiff relies solely on its residence in Kansas and the fact that it suffered harm in Kansas.  These facts do not establish express aiming. See Shrader, 633 F.3d at 1244 (standing alone, plaintiff's residence and suffering of harm in forum do not support jurisdiction); see also Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x 86, 97–98 (10th Cir. 2012) (defendants' attenuated connection to forum insufficient to establish forum as focal point of defendants' torts).

The Court therefore cannot infer that defendant expressly aimed any conduct at Kansas, and it sustains defendant's motion to dismiss for lack of specific personal jurisdiction.

**II.     Venue**

In the alternative, defendant argues that the Court should dismiss plaintiff's complaint for improper venue or transfer venue to the Northern District of Oklahoma under 28 U.S.C. § 1404. The Court may transfer an action when venue is improper even if it lacks personal jurisdiction over defendant.  King v. Caliber Home Loans, Inc., 210 F. Supp. 3d 130, 134 (D.D.C. 2016). Accordingly, defendant's request is not moot.

    A.     Improper Venue

Venue refers to the place where a lawsuit should be brought.  Universal Premium Acceptance Corp. v. Oxford Bank & Tr., 277 F. Supp. 2d 1120, 1128 (D. Kan. 2003).   Under 28 U.S.C. § 1391(b), the statute which governs venue, venue is proper in (1) the judicial district where defendant resides; (2) a judicial district where a substantial part of the events or omissions giving rise to the claim occurred; or (3) any district where defendant is subject to the court's personal jurisdiction.  28 U.S.C. § 1391(b)(1)–(3).  Business entities, such as defendant, are deemed to reside in any district of any state in which it has sufficient contacts to subject it to the court's personal jurisdiction.  28 U.S.C. § 1391(c)(2).  Because defendant is not subject to the personal jurisdiction of this Court, the only possible ground for venue is Section 1391(b)(2).

Under Section 1391(b)(2), "venue is not limited to the district with the *most* substantial events or omissions."  Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1165 (10th Cir. 2010) (emphasis in original).  Rather, the provision contemplates that venue may be appropriate in multiple judicial districts, as long as a substantial part of the underlying events took place in those districts.  Id. at 1166.

The Tenth Circuit has adopted a two-part framework for reviewing challenges to venue under Section 1391(b)(2). Id. First, the Court examines the nature of plaintiff's claims and the acts or omissions underlying those claims. Id. Here, plaintiff asserts three claims under Kansas law for breach of contract, unjust enrichment and negligent misrepresentation. Underlying these claims, plaintiff alleges that defendant made a false or misleading representation that it would provide the lien releases to plaintiff and when it failed to do so, it breached their agreement.

Second, the Court considers whether the "substantial events material to those claims occurred" in the forum district. Id. (internal quotations omitted). Plaintiff can satisfy this requirement by showing "acts and omissions that have a close nexus to the alleged claims." Id. (internal quotations omitted). In this action, the substantial and material events would include defendant's representation that it would provide the lien release to plaintiff and its failure to do so. Both occurred in Oklahoma. On these facts, the Court cannot conclude that a substantial part of the events or omissions giving rise to plaintiff's claims occurred in Kansas. Accordingly, under Section 1391, venue in this district is improper.

B.   Transferring Venue

Defendant asks that if the Court finds that it has personal jurisdiction and that venue is proper, it transfer the case to the United States District Court for the Northern District of Oklahoma under 28 U.S.C. § 1404. The Court has found that venue is improper in this district, so the proper mechanism to transfer venue would be under 28 U.S.C. § 1406. The parties have not briefed transfer under this statute.[2] The Court therefore overrules defendant's request to

---

[2] Under Section 1404, the Court may transfer an action—even when venue is proper—"to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. By contrast, under Section 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong
(continued. . .)

transfer venue.

**IT IS THEREFORE ORDERED** that <u>Defendant BancCentral N.A.'s Motion To Dismiss Case For Lack Of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2), For Improper Venue Under Fed. R. Civ. P. 12(b)(3), Or In The Alternative To Transfer Venue To The United States District Court For The Northern District Of Oklahoma</u> (Doc. #6) filed November 27, 2024 is **SUSTAINED in part and OVERRULED in part. The Court sustains defendant's motion to dismiss for lack of personal jurisdiction and improper venue. The Court overrules defendant's request to transfer venue under 28 U.S.C. § 1404.**

Dated this 4th day of February, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[2] (. . .continued)
division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. As noted, the parties have not briefed whether transfer under this statute would be appropriate. Accordingly, because venue is improper in this district, the Court "shall dismiss" the case.